# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDIBLE ARRANGEMENTS INTERNATIONAL, INC., | : | |
| | : | |
| | : | Case No.:  3:07-CV-01788 (JCH) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| RICHARD CHINSAMMY, INCREDIBLE FRANCHISE CORPORATION, MAUREEN DUGERT, and RM INVESTMENTS, LLC, | : | |
| | : | |
| | : | |
| Defendants. | : | May 7, 2008 |

## AMENDED COMPLAINT

Plaintiff Edible Arrangements International, Inc. ("Edible Arrangements" or "the Company") for its Complaint against defendants, Richard Chinsammy ("Mr. Chinsammy"), Incredible Franchise Corporation ("IFC"), Maureen Dugert ("Ms. Dugert") and RM Investments, LLC ("RM Investments"), hereby alleges:

### NATURE OF ACTION

1.     This is an action for breach of contract, misappropriation of trade secrets, statutory theft, tortious interference, unjust enrichment, violation of the Connecticut Uniform Trade Secrets Act ("CUTSA"), violation of the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), common law unfair competition and conspiracy.  Plaintiff seeks preliminary and permanent injunctive relief, actual and punitive damages, statutory treble damages, and attorney's fees.

**PARTIES, SUBJECT MATTER JURISDICTION AND VENUE**

2.      Edible Arrangements is a Connecticut corporation with its principal place of business at 95 Barnes Road, Wallingford, Connecticut, 06492.

3.      IFC is a Pennsylvania corporation with its principal place of business in the Commonwealth of Pennsylvania, which offers Fruit Flowers and/or Incredibly Edible Delites franchises for sale nationwide, including in Connecticut, and conducts business through the Internet under the name "Fruit Flowers Incredibly Edible Delites" at its website, www.fruitflowers.com, which advertises products and allows customers to order products and locate franchises in their areas.

4.      Upon information and belief, RM Investments is a Maryland corporation with its principal place of business at 21811 Goshen School Road, Gaithersburg, Maryland 20882, and may be served with process through its agent Gerald K. Gimmel, at Suite 145, 4 Professional Drive, Gaithersburg, Maryland 20879.

5.      Upon information and belief, Mr. Chinsammy is a 49% owner of RM Investments.  He is also a former Vice President of Franchise Sales and Development for Edible Arrangements, and a former franchise sales consultant and/or broker for IFC.  Upon information and belief, Mr. Chinsammy is a citizen of the State of Maryland.

6.      Upon information and belief, Ms. Dugert is a 51% owner of RM Investments and Mr. Chinsammy's wife.  Upon information and belief, Ms. Dugert is a citizen of the State of Maryland.

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 on the basis of diversity among the parties and because the amount in controversy exceeds $75,000, exclusive of interest or costs.

8.     Venue is proper in this judicial district because Mr. Chinsammy has consented to venue in Connecticut in a written agreement that is a subject of this action.

9.     Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Edible Arrangements' claims occurred in this district, and a substantial part of the property that is the subject of the action is situated and/or was misappropriated here.

## FACTS

**Edible Arrangements' Business**

10.     Edible Arrangements is the franchisor of a successful and rapidly growing franchise system.  It started with one location in East Haven, Connecticut in 1999, currently has approximately 693 open franchised units in 47 states, Puerto Rico and Washington D.C., and 26 open franchised units in 4 Canadian provinces.  Edible Arrangements expects to have 113 more franchised units in the United States and Canada in the near future.  Edible Arrangements has been continuously engaged in business activities in interstate commerce since about 2001.

11.     Edible Arrangements franchises sell fresh fruit arrangements resembling floral bouquets, generally sent as gifts from purchasers to others.  Edible Arrangements has expended substantial time, effort and money to develop its proprietary production techniques, operating systems, franchising systems, unique products, innovative marketing programs and other facets of its franchise system, which has been recognized in ENTREPRENEUR, THE WALL STREET JOURNAL, FORBES, and INC., and on CNBC (during the programs ON THE MONEY, THE CALL, and THE BIG IDEA), THE TONY DANZA SHOW, THE FOOD NETWORK, MSNBC, and CANADA AM on Canada's CTV.

3

12.     Edible Arrangements owns and/or has rights to a wide array of confidential information and trade secrets, including, but not limited to, substantial lists of prospective franchisees (the "lead list") and lead management software, which identify prospective franchisees, as well as Edible Arrangements' business plans, expansion strategies, mailing lists, customer lists, franchisee lists, and other confidential and proprietary information (collectively "Confidential Information").

**Edible Arrangements' Employment of Mr. Chinsammy**

13.     In June 2007, Edible Arrangements hired Mr. Chinsammy as its Vice President of Franchise Sales and Development, a top-level senior management and officer position, at an annual salary of $120,000, with the opportunity for a $15,000 performance bonus.  Edible Arrangements also agreed to pay him, and later paid him, a $10,000 moving stipend.  Mr. Chinsammy reported directly to Edible Arrangements' CEO, Tariq Farid, and oversaw the sales and development of Edible Arrangements franchises, regularly contacting prospective domestic and international franchising leads and taking them through the process of purchasing and opening a franchise, and supervising other employees who conducted similar functions.  Mr. Chinsammy also attended over three weeks of hands-on and classroom training regarding every aspect of the Edible Arrangements system.

14.     On or about June 19, 2007, Mr. Chinsammy executed an Employment Agreement, which contains a covenant not to compete and explicitly states that "all Confidential Information shall be the sole property of the Company," and defines Confidential Information to include:

> (a)     confidential or secret records, data, processes, methods, procedures, techniques, plans, designs, machinery, devices, appliances, tools, improvements, drawings, computer programs, discoveries, inventions, shop

rights, products, or trade secrets relating to the current or foreseeable businesses or activities of the Company, its Affiliate or any Franchisee;

(b)    any mailing list, customer list, Franchisee list, prospective franchisee list, supplier list, or other information relating to the Company, any Franchisee, Affiliate, or any customer of the Company, any Affiliate, or any Franchisee;

(c)    the Company's, the Affiliate's and each Franchisee's personnel records; or

(d)    pricing policy, rate structure, personnel policy, method or practice of obtaining or doing business of or by the Company, the Affiliate and/or any Franchisee, or any other confidential or secret aspect of the current or foreseeable businesses or activities of the Company, the Affiliate and/or any Franchisee.

15.    Pursuant to the same Employment Agreement Mr. Chinsammy also agreed that:

8.02    The Employee agrees that all Confidential Information that may at any time have come into the Employee's possession while in the employ of the Company (whether or not obtained with the knowledge and permission of the Company, any Affiliate or any Franchisee and whether or not obtained in whole or in part by the efforts of the employee) belongs to the Company or the applicable Affiliate or Franchisee, as appropriate. Employee will not during or after employment with the Company, disclose to anyone not identified by the Company as being a permissible recipient thereof of any Confidential Information or the existence thereof. Employee will not, during or after employment with the Company, use or attempt to use, or permit to be used, any Confidential Information for the direct or indirect benefit of Employee or any individual or entity.

8.03    Upon leaving the employ of the Company for any reason, the Employee shall not, for the direct or indirect benefit of Employee or another: (i) take with Employee, without the written consent of the Company, any Confidential Information or copies thereof in any media; or (ii) reconstruct the same or similar information from memory or from some other source associated with the Company, its Affiliate or any Franchisee.

16.    Further, in Section 5 of the Employment Agreement, Mr. Chinsammy agreed that:

[W]hile employed by the Company or at any time after the termination of Employee's employment with the Company, for whatever reason, whether for Employee's own account or for the account of any other person, firm, corporation or other organization or entity: (i) interfere with relationships between or among the Company, its Affiliate, any of the Franchisees and any of their respective customers or employees; (ii) endeavor to entice away from the

Company or its Affiliate or any Franchisee any person who is employed or associated with the Company or its Affiliate or any Franchisee or is a customer of the Company or its Affiliate or any Franchisee; or (iii) otherwise interfere in any way with contracts between or among the Company, its Affiliate and any Franchisee and any other party

17.    Section 12 of Mr. Chinsammy's Employment Agreement also provides that:

Without intending to limit the remedies available to the Company which shall include the right to seek monetary damages and pursue any and all other rights and remedies available either at law or in equity, the Employee agrees that damages at law will be an insufficient remedy to the Company in the event that the Employee violates any provision of Sections 5, 6, 7, 8, 9, 11 or 13 of this agreement.  Employee agrees that the Company would suffer immediate and irreparable harm as a result of any such violation. Accordingly Employee agrees that the Company may apply for and obtain an immediate, temporary restraining order against the continuance of any such violation without need for a hearing at which the Employee could be present, and without need of showing actual damages. Employee further agrees that the Company would thereafter be entitled to obtain permanent injunctive relief in any court of competent jurisdiction to restrain the breach of or otherwise to specifically enforce, any of the covenants of such Sections.

18.    By executing the Employment Agreement, Mr. Chinsammy also expressly agreed that its provisions would be "governed by and construed in accordance with the laws of the State of Connecticut, without giving effect to its conflict of laws provisions;" "agree[d] and consent[ed] to the exclusive jurisdiction of the federal and state courts sitting in Connecticut with appropriate subject matter jurisdiction;" and "agree[d] that litigation with respect thereto may only be brought and maintained in such courts."

19.    On or about June 19, 2007, Mr. Chinsammy also executed a separate and distinct Confidentiality Agreement which restated the language quoted in Paragraphs 12 and 13 above.[1]

20.    As part and parcel of his job responsibilities as Edible Arrangements' Vice President of Franchising Sales and Development, Mr. Chinsammy was familiar with all aspects

---

[1] There is a typographical error in the Confidentiality Agreement:  "Edible Arrangements International, Inc." is referred to as "Edible Arrangements, Inc."  To the best of Edible Arrangements' knowledge, there has never been a corporation called "Edible Arrangements, Inc."

of Edible Arrangements' business, contributed to the formulation of business strategies and objectives, and gained extensive knowledge of and familiarity with intimate details about Edible Arrangements' franchisees and prospective franchisees and Edible Arrangements' regular business practices and expansion strategies. Mr. Chinsammy necessarily became privy to the lead list and lead management software, as well as mailing lists, customer lists and franchisee lists. Mr. Chinsammy was therefore exposed to substantial Confidential Information and trade secrets concerning Edible Arrangements' business strategies, prospective franchisees' specific needs, preferences, and strategies, through a variety of means. Indeed, Mr. Chinsammy's familiarity with, and use of, such Confidential Information was integral to the performance of his duties.

21.     Edible Arrangements developed all of the Confidential Information to which Mr. Chinsammy was exposed at significant cost in time and money. This Confidential Information gives Edible Arrangements an advantage over competitors and derives independent economic value from not being generally known to, or readily ascertainable through proper means by, other persons who could obtain economic value from its disclosure or use.

22.     Edible Arrangements does not publish, disseminate, or otherwise make its Confidential Information available to any third parties or the public. To the contrary, Edible Arrangements closely guards the secrecy of its Confidential Information to prevent it from becoming available to persons other than its duly authorized employees and agents. These measures are reasonable and include, but are not limited to, requiring that all employees having access to the Confidential Information execute an Employment Agreement containing non-disclosure covenants and a separate and distinct Confidentiality Agreement containing similar provisions, reminding employees of their confidentiality responsibilities in its Employee

Handbook, limiting the number of employees with access to Confidential Information, and requiring employees with such access to immediately return any and all documents containing or referring to such information upon termination of employment.

23.    Without warning, on September 7, 2007, Mr. Chinsammy arrived at Edible Arrangements before normal business hours and cleaned out his office, apparently resigning his position. Mr. Chinsammy gave no notice, and caught Edible Arrangements off guard with his sudden departure. September 6, 2007, was Mr. Chinsammy's last day of work for Edible Arrangements. Shortly before he walked off the job, Mr. Chinsammy participated in a meeting regarding current sales department issues and attended an Edible Arrangements Vice Presidents' meeting in which Edible Arrangements' high level, confidential short and long term strategies were discussed, including details about growth plans and initiatives.

**Defendants' Current Business Activities and Fraudulent Attempts to Conceal Wrongdoing**

24.    Defendant IFC is a direct competitor of Edible Arrangements, offering franchising opportunities to prospective franchisees in the United States and elsewhere. IFC's franchises sell fresh fruit arrangements resembling floral bouquets.

25.    Within a few days after his sudden departure from Edible Arrangements, Mr. Chinsammy contacted IFC, and soon thereafter he and IFC agreed to commence a business relationship and to enter into a written contract concerning the financial terms of that relationship. Upon information and belief, defendant Ms. Dugert insisted that Mr. Chinsammy not be a party to this contract, and that IFC instead enter into the contract with defendant RM Investments, Mr. Chinsammy and Ms. Dugert's company. RM Investments and IFC entered into their contract on or about September 21, 2007. Upon further information and belief, Ms. Dugert attempted through this arrangement to hide from Edible Arrangements Mr. Chinsammy's

involvement in defendants' activities on IFC's behalf, as described below.  In furtherance of this cover-up scheme, Ms. Dugert submitted invoices in her own name for the services that Mr. Chinsammy performed for IFC, and instructed IFC to make the checks for those services payable to her.

26.    IFC's President and Chief Executive Officer, Gary W. Zimmerman ("Mr. Zimmerman"), testified at his deposition that he and his staff had business conversations with Ms. Dugert and that Ms. Dugert "did a lot of the detail things behind the scenes" regarding Mr. Chinsammy's services for IFC.

27.    Soon after retaining Mr. Chinsammy's services, IFC began contacting and soliciting Edible Arrangements' franchisees and prospective franchisees regarding franchising opportunities with IFC.  Upon information and belief, none of these franchisees or prospective franchisees had any contact with IFC before Mr. Chinsammy's termination of his employment with Edible Arrangements and subsequent employment and/or retention by IFC.  Several of these prospective franchisees (as well as existing Edible Arrangements franchisees) reported receiving communications from IFC on personal e-mail addresses never divulged to IFC but to which Mr. Chinsammy had access during his Edible Arrangements employment.  These franchisees and prospects asked Edible Arrangements how IFC had received their contact information.

28.    Defendants have directly and/or indirectly solicited business from Edible Arrangements' franchisees and prospective franchisees, and diverted, or attempted to divert such business from Edible Arrangements to IFC using Edible Arrangements' Confidential Information.

29.    In furtherance of his competitive efforts on behalf of IFC, Mr. Chinsammy used Confidential Information learned by him solely on account of his employment by Edible

9

Arrangements, thereby directly violating the spirit and letter of both the Employment and Confidentiality Agreements.

30.    IFC is aware of the existence and terms of the Employment and Confidentiality Agreements and, upon information and belief, was or should have been aware of the existence and terms of those Agreements since at least the time it retained Mr. Chinsammy.  IFC has benefited or will benefit from Mr. Chinsammy's knowledge and/or solicitation of Edible Arrangements' franchisees and prospective franchisees, as well as his knowledge of Edible Arrangements' expansion strategies and other Confidential Information.

31.    Mr. Chinsammy and IFC are in possession of and have used Edible Arrangements' Confidential Information.  All defendants knew or should have known that information that Mr. Chinsammy provided and/or used on IFC's behalf included Edible Arrangements' Confidential Information, including trade secrets as that term is used in the CUTSA and/or PUTSA and/or are otherwise proprietary to Edible Arrangements.  Further, all defendants knew or should have known that disclosure or use of such trade secrets and/or other Confidential Information constituted a breach of confidence reposed in Mr. Chinsammy by Edible Arrangements and was otherwise contrary to law.  Despite such knowledge or notice, defendants continued, directly or indirectly, to use those trade secrets and/or other Confidential Information to compete directly against Edible Arrangements.

32.    Edible Arrangements never consented to defendants' actions, and would never have disclosed Confidential Information and/or trade secrets and other proprietary information to Mr. Chinsammy, or authorized or asked any of its affiliates, franchisees, or prospective franchisees to do so, had it known that this information would be used in furtherance of a competing business.

33.     Defendants' wrongful activities have already harmed Edible Arrangements' existing business and expansion plans.   For example, several prospective franchisees have contacted Edible Arrangements for information regarding IFC.  In addition, Mr. Chinsammy and IFC have contacted several other prospective Edible Arrangements franchisees concerning the establishment of IFC franchises that will directly compete with Edible Arrangements in territories where Edible Arrangements is seeking to expand.  Edible Arrangements believes that it has already lost considerable business because of defendants' wrongful contact with Edible Arrangements' domestic and international leads, resulting in Edible Arrangements' lost sales.

34.     On November 16, 2007, Edible Arrangements sent both Mr. Chinsammy and IFC and its affiliate, Incredibly Edible Delites, Inc., letters demanding, among other things, that they cease and desist from disclosing and using Edible Arrangements' Confidential Information. Copies of these cease and desist letters are attached as Exhibits 1 and 2.

35.     On November 27, 2007, IFC replied to the cease and desist letter via a letter written and signed by its President and Chief Executive Officer, Mr. Zimmerman.  A copy of Mr. Zimmerman's November 27, 2007 letter is attached as Exhibit 3.  This letter was the first step in a continuing scheme by IFC to cover-up its wrongful misappropriation of Edible Arrangements' Confidential Information.   Mr. Zimmerman claimed that "Incredible Franchise Corporation has neither employed, retained the services of, nor entered into any contractual relationship with Richard Chinsammy," and "strongly den[ied] that we have ever used or have been privy to any Edible Arrangements [sic] confidential or proprietary information."

36.     By contrast, in response to the cease and desist letter Mr. Chinsammy, through counsel, admitted having a sales consulting "association" with IFC.

37.     During his deposition on January 8, 2008, Mr. Zimmerman admitted that his response to the cease and desist letter on IFC's behalf was "inaccurate," "foolish," and "stupid." In fact, the representations in Mr. Zimmerman's letter were false and misleading, intended to deceive Edible Arrangements about the existence of IFC's relationship with Mr. Chinsammy, induce Edible Arrangements to stop its inquiries, and thereby enable IFC surreptitiously to gain substantial economic benefits from misappropriating and using Edible Arrangements' Confidential Information.

38.     Mr. Zimmerman admitted during his deposition that, contrary to the representations in his letter, IFC had received sales lead information from Mr. Chinsammy. However, Mr. Zimmerman denied that he had obtained or received Edible Arrangements' lead information knowingly or intentionally.  Rather, Mr. Zimmerman asserted that Mr. Chinsammy had simply given him "a CD with e-mail addresses that [Mr. Chinsammy] maintained for years," and had assured Mr. Zimmerman that none of the information came from Edible Arrangements.

39.     Further discovery has now revealed that, contrary to Mr. Zimmerman's sworn testimony, at or about the time when Mr. Chinsammy and Ms. Dugert began providing services to IFC, Mr. Chinsammy, on his own behalf and as RM Investments' agent, gave IFC a computer disc (the "Chinsammy Disc").

40.     The Chinsammy Disc included contact information for numerous individuals whom Edible Arrangements had already identified as prospects, and about whom Mr. Chinsammy had learned solely by virtue of his access to Edible Arrangements Confidential Information.  IFC, Mr. Chinsammy and Ms. Dugert knew or should have known that the Chinsammy Disc contained substantial amounts of Edible Arrangements' Confidential Information.

41.     Upon information and belief, IFC knowingly and intentionally attempted to cover up the true contents of the Chinsammy Disc.  At his deposition, Mr. Zimmerman represented that he had given the original Chinsammy Disc to IFC's counsel.[2]  IFC later produced a floppy disc, representing that it contained "exactly what IFC received from Mr. Chinsammy."  On March 5, 2008, after several requests for permission to do so, Edible Arrangements inspected, at IFC's counsel's office, the original CD that Mr. Zimmerman had testified was the Chinsammy Disc. That inspection revealed, however, that this CD was not the Chinsammy Disc at all, but a disc created by IFC employee Matt Davis (the "Davis Disc") on December 31, 2007, after Edible Arrangements filed this lawsuit and after discovery had already begun.

42.     On or about March 7, 2008, IFC's counsel reported that he had obtained a replacement disc from IFC (the "Replacement Disc"), which contained many more files than the Davis Disc, and that those files appeared to contain Edible Arrangements' information.

43.     The Davis Disc (a floppy disc copy of which was produced) contained only a single file – a spreadsheet in Microsoft Excel format entitled "Emails from Richard" – that amounted to only 145 pages when printed.  On March 13, 2007, IFC produced thousands of

---

[2]  Mr. Zimmerman testified as follows:

> Q.  What did you do with the computer disk that Mr. Chinsammy gave you?
> A.  I gave it to Matt Davis, who is on our staff, and asked him to marry it, blend it, with our database.  We had thousands of names in the database, as well of leads, and to blend those two together to do a broadcast, an e-mail broadcast, soliciting leads.
> Q.  Do you know whether this computer disk that Mr. Chinsammy gave you and that you passed on to Mr. Davis still exists?
> A.  Does it still exist?  Yes.  I gave it to my attorney.
> MR. DUNHAM: So, Tom, you are in possession of the disk itself?
> A.  Yes..
> Q.  Okay.  And as far as you know, Mr. Zimmerman, and I understand that it was not -- it hasn't been in your custody since you gave it to Mr. Davis, but as far as you know, is the disk in the form that you gave it to Mr. Clark the -- have the same content as when you received it from Mr. Chinsammy?
> A.  I guess, yeah.  I don't -- We didn't do anything with it other than just pass it on.  We downloaded the information . . .

Deposition of Mr. Zimmerman, January 8, 2008, p. 75, l.3 – p. 76, l.3.

additional pages of information printed from the Replacement Disc, including multiple lead lists clearly compiled by Edible Arrangements' employees.

44.      Thus, discovery has now established that when Mr. Zimmerman sent his November 27, 2007 letter denying that IFC had "ever used or have been privy to any Edible Arrangements [sic] confidential or proprietary information," IFC in fact had in its possession – and had downloaded onto its computer system – extensive Edible Arrangements' Confidential Information contained on the computer disc that Mr. Chinsammy gave IFC.  Upon information and belief, IFC used Edible Arrangements' Confidential Information in an effort to sell IFC franchises to Edible Arrangements' prospects and thereby divert lucrative business opportunities from Edible Arrangements.  Discovery has also revealed that when Edible Arrangements filed this lawsuit, IFC was close to entering into business transactions with certain Edible Arrangements prospects about whom it had learned from Mr. Chinsammy.  Upon information and belief, some or all of those prospects would have done business with Edible Arrangements if IFC and Mr. Chinsammy had not wrongfully diverted these business opportunities.

45.      Mr. Zimmerman further admitted at his deposition that after he sent his misleading and deceptive November 27, 2007 letter, IFC continued using Mr. Chinsammy as a broker or sales consultant.  Despite notice of the allegations in this lawsuit (filed on December 6, 2007), according to Mr. Zimmerman, that relationship did not end until mid to late December 2007.

## COUNT I
## **BREACH OF CONTRACT**
### (Against Defendant Mr. Chinsammy)

46.      Plaintiff incorporates the allegations in Paragraphs 1 through 45.

47.     Mr. Chinsammy's actions have breached the express provisions of the Employment and Confidentiality Agreements.

48.     Mr. Chinsammy's actions have also breached the Employment and Confidentiality Agreements' implied covenants of good faith and fair dealing.

49.     Mr. Chinsammy's actions have damaged Edible Arrangements in ways, extents and amounts to be further ascertained.  In addition, Mr. Chinsammy's actions have irreparably harmed and will continue to harm Edible Arrangements in ways and extents for which there is no adequate remedy at law.

**COUNT II**
**TORTIOUS INTERFERENCE**
(Against Defendants IFC, RM Investments and Ms. Dugert)

50.     Plaintiff incorporates the allegations in paragraphs 1 through 45.

51.     Beneficial contractual relationships and expectancies have existed, and do exist, between Edible Arrangements and Mr. Chinsammy.

52.     Defendants IFC, RM Investments and Ms. Dugert were at all times aware of these beneficial contractual relationships and expectancies.

53.     Upon information and belief, without privilege or justification, these defendants intentionally and tortiously interfered with these beneficial contractual relationships and expectancies, as well as with Edible Arrangements' economic advantage, through its wrongful conduct.

54.     Upon information and belief, these defendants undertook the complained of activities knowing about these beneficial contractual relationships and expectancies and in willful and malicious disregard thereof.

55.     These defendants' actions have damaged Edible Arrangements in ways, extents and amounts to be further ascertained.  In addition, these actions have irreparably harmed and will continue to irreparably harm Edible Arrangements in ways and extents for which there is no adequate remedy at law.

## COUNT III
## TORTIOUS INTERFERENCE
(Against All Defendants)

56.     Plaintiff incorporates the allegations in Paragraphs 1 through 45.

57.     Beneficial business relationships and business expectancies have existed, and do exist, between Edible Arrangements and its current and prospective franchisees.

58.     Defendants knew of these beneficial business relationships and business expectancies.

59.     Upon information and belief, without privilege or justification, defendants have intentionally and tortiously interfered with these beneficial business relationships and business expectancies, as well as with Edible Arrangements' economic advantage, through their wrongful conduct.

60.     Defendants undertook the complained of activities knowing about these beneficial business relationships and business expectancies and in willful and malicious disregard of them.

61.     Defendants' actions have damaged Edible Arrangements in ways, extents and amounts to be further ascertained.  In addition, defendants' actions have irreparably harmed and will continue to irreparably harm Edible Arrangements in ways and extents for which there is no adequate remedy at law.

## COUNT IV
## TRADE SECRET MISAPPROPRIATION UNDER CUTSA
(Against All Defendants)

62.     Plaintiff incorporates the allegations in Paragraphs 1 through 45.

63.     Defendants knew or had reason to know that they had acquired Edible Arrangements' trade secrets through improper means

64.     Defendants misappropriated Edible Arrangements' trade secrets by acquiring them through improper means as defined by Conn. Gen. Stat. § 35-51(b).

65.     Upon information and belief, defendants' misappropriation was willful and malicious.

66.     Defendants' actions have damaged Edible Arrangements in ways, extents and amounts to be further ascertained.   In addition, defendants' actions have irreparably harmed Edible Arrangements in ways and extents for which there is no adequate remedy at law, and defendants' actions will continue to harm Edible Arrangements irreparably if they continue to disclose or use Edible Arrangements' trade secrets.

## COUNT V
## TRADE SECRET MISAPPROPRIATION UNDER PUTSA
(Against All Defendants)

67.     Plaintiff incorporates the allegations in Paragraphs 1 through 45.

68.     Defendants knew or had reason to know that they had acquired Edible Arrangements' trade secrets through improper means.

69.     Defendants misappropriated Edible Arrangements' trade secrets by acquiring them through improper means as defined in 12 Pa. C.S.A. § 5302 of PUTSA.

70.     Defendants misappropriated Edible Arrangements' trade secrets by disclosing or using the trade secrets without consent while knowing at the time of the disclosure or use that the

trade secrets were derived from or through a person who had utilized improper means to acquire them, acquired under circumstances giving rise to a duty to maintain their secrecy, or derived from or through a person who owed a duty to Edible Arrangements to maintain their secrecy.

71.     Upon information and belief, defendants' misappropriation was willful and malicious.

72.     Defendants' actions have damaged Edible Arrangements in ways, extents and amounts to be further ascertained.   In addition, defendants' actions have irreparably harmed Edible Arrangements in ways and extents for which there is no adequate remedy at law, and defendants' actions will continue to harm Edible Arrangements irreparably if they continue to disclose or use Edible Arrangements' trade secrets.

**COUNT VI**
**STATUTORY THEFT**
(Against All Defendants)

73.     Plaintiff incorporates the allegations in Paragraphs 1 through 45.

74.     Defendants acted intentionally in misappropriating the Edible Arrangements Confidential Information.

75.     Defendants thereby committed theft in violation of Conn. Gen. Stat. § 52-564.

76.     As a result of this misconduct, Edible Arrangements has sustained damages and is entitled to treble damages under Conn. Gen. Stat. § 52-564.

**COUNT VII**
**CONVERSION**
(Against All Defendants)

77.     Plaintiff incorporates the allegations in Paragraphs 1 through 45.

78.     Edible Arrangements' Confidential Information was, before defendants' wrongful actions, in Edible Arrangements' custody, possession and control.

79.    Defendants have wrongfully and without authorization converted and exercised ownership over this information and property in their business activities.

80.    Defendants have assumed and exercised control over the information and property to the exclusion of Edible Arrangements' legal rights, permanently or for an indefinite time.

81.    Defendants' actions have damaged Edible Arrangements in ways, extents and amounts to be further ascertained.  In addition, defendants' actions have irreparably harmed and will continue to irreparably harm Edible Arrangements in ways and extents for which there is no adequate remedy at law.

## COUNT VIII
## UNJUST ENRICHMENT
(Against All Defendants)

82.    Plaintiff incorporates the allegations in Paragraphs 1 through 45.

83.    Defendants have benefited from their misappropriation and use of the Edible Arrangements' Confidential Information.

84.    In equity and good conscience, defendants should not have used this Confidential Information.

85.    Defendants unjustly have not compensated Edible Arrangements for this benefit to Edible Arrangements' detriment.

86.    Defendants' actions have damaged Edible Arrangements in ways, extents and amounts to be further ascertained.  In addition, defendants' actions have irreparably harmed and will continue to irreparably harm Edible Arrangements in ways and extents for which there is no adequate remedy at law.

## COUNT IX
## VIOLATION OF CUTPA
(Against All Defendants)

87.     Plaintiff incorporates the allegations in Paragraphs 1 through 45.

88.     Defendants' wrongful activities, as described above, are unfair, deceptive, immoral, unethical and constitute unfair methods of competition and/or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110a, *et seq*.

89.     Defendants' misconduct occurred in the conduct of trade or commerce, was intimately associated with the State of Connecticut, caused harm to a company incorporated and headquartered in this State, and caused and will continue to cause substantial injury to consumers, competitors and/or other businesspeople in this State.

90.     Defendants' actions have damaged Edible Arrangements in ways, extents and amounts to be further ascertained.  In addition, defendants' actions have irreparably harmed and will continue to irreparably harm Edible Arrangements in ways and extents for which there is no adequate remedy at law.

## COUNT X
## UNFAIR COMPETITION
(Against All Defendants)

91.     Plaintiff incorporates the allegations in Paragraphs 1 through 45.

92.     Defendants' activities as above described constitute unfair competition in violation of the common law.

93.     Defendants' actions have damaged Edible Arrangements in ways, extents and amounts to be further ascertained.  In addition, defendants' actions have irreparably harmed and will continue to irreparably harm Edible Arrangements in ways and extents for which there is no adequate remedy at law.

**COUNT XI**
**CONSPIRACY**
(Against All Defendants)

94.     Plaintiff incorporates the allegations in Paragraphs 1 through 45.

95.     Defendants, acting in combination, misappropriated, converted, stole and/or otherwise improperly used Edible Arrangements' Confidential Information.

96.     Defendants' actions have damaged Edible Arrangements in ways, extents and amounts to be further ascertained.  In addition, defendants' actions have irreparably harmed and will continue to irreparably harm Edible Arrangements in ways and extents for which there is no adequate remedy at law.

WHEREFORE, plaintiff prays for this relief:

(a)     Entry of Orders of the Court that:

(i)     For a period of six months from the date of the Court's Order, Mr. Chinsammy, Ms. Dugert, and RM Investments be enjoined from providing services, in any capacity, to any competitor of Edible Arrangements, including IFC, or to any other person, firm or entity for purposes of engaging in any business of the same or similar nature to Edible Arrangements' business in any state or province with Edible Arrangements' corporate and/or franchised locations;

(ii)    Defendants and their affiliates, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, be preliminarily and permanently enjoined from disclosing any of Edible

Arrangements' Confidential Information and/or trade secrets to any other person, firm, corporation or entity;

    (iii)    Defendants and their affiliates, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, be preliminarily and permanently enjoined from using Edible Arrangements' Confidential Information and/or trade secrets in any way;

    (iv)    Defendants and their affiliates, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, account for and turn over to Edible Arrangements all of Edible Arrangements' Confidential Information; and

    (v)    Defendants and their affiliates, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, account for, and pay over to Edible Arrangements, all profits realized by defendants in connection with their wrongful activities;

(b)    actual damages;

(c)    punitive damages pursuant to the common law;

(d)    disgorgement of defendants' profits from their wrongful activities;

(e)    restitution;

(f)    treble damages pursuant to Conn. Gen. Stat. § 52-564;

(g)     actual damages, recovery for unjust enrichment, punitive damages, costs and
attorney's fees pursuant to Conn. Gen. Stat. § 35-53;

(h)     punitive damages, costs and attorney's fees pursuant to Conn. Gen. Stat. § 42-
110a, *et seq.*;

(i)     actual damages, recovery for unjust enrichment, royalties, and exemplary double
damages pursuant to 12 Pa. C.S.A. § 5304, attorney's fees, expenses and costs
pursuant to 12 Pa. C.S.A. § 5305;

(j)     pre- and post-judgment interest; and

(k)     such further and additional relief as the Court may deem just and proper.


## DEMAND FOR JURY TRIAL

Edible Arrangements requests trial by jury of all issues so triable.


PLAINTIFF
EDIBLE ARRANGEMENTS
INTERNATIONAL, INC.


By: _____
        Edward Wood Dunham (ct05429)
        Bethany L. Appleby (ct18418)
        WIGGIN AND DANA LLP
        One Century Tower
        P.O. Box 1832
        New Haven, CT 06508-1832
        (203) 498-4400
        (203) 782-2889 fax
        edunham@wiggin.com
        bappleby@wiggin.com

## **CERTIFICATION OF SERVICE**

I hereby certify that on May 7, 2008, a copy of foregoing document was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

_____

Edward Wood Dunham