1
2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

3
4
5
6
7
8
9
10
11
12
13
14
15
16

**EDIBLE ARRANGEMENTS**
**INTERNATIONAL, INC.,**                )
                )         **3:07-cv-1788 (WWE)**
                )
          **Plaintiff,**        )
                )
     **vs.**          )
                )
                )
**INCREDIBLE FRANCHISE**        )
**CORPORATION,**          )
                )
          **Defendant.**        )

17

**SUBSTANTIVE JURY INSTRUCTIONS**

18    In this case, plaintiff Edible Arrangements International, Inc. ("Edible

19  Arrangements") asserts the following claims against defendant Incredible Franchise

20  Corporation ("IFC"): (1) tortious interference with contractual relations; (2) tortious

21  interference with business relationships and expectancies with prospective franchisees;

22  (3) violation of the Connecticut Uniform Trade Secrets Act; (4) violation of the

23  Connecticut Unfair Trade Practices Act § 42-110a; (5) unjust enrichment; (6) unfair

24  competition; and (7) statutory theft pursuant to Connecticut General Statutes § 52-564.

25    I will set forth the legal standards applicable to these claims and you must

26  determine whether the evidence you find relevant and credible meets the particular

27  standard you are examining.

28  **TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

29    Edible Arrangements claims that IFC tortiously interfered with its contractual

30  relationship with Richard Chinsammy.  In Connecticut, one who intentionally and

1

1    improperly interferes with the performance of a contract between another and a third

2    person by inducing or otherwise causing the third person not to perform the contract is

3    subject to liability to the other person for the pecuniary loss resulting to the other from

4    the failure of the third person to perform the contract.

5         In order to recover for this claim, Edible Arrangements must prove that (1) it had a

6    contractual relationship with Mr. Chinsammy; (2) IFC knew of that relationship; (3) IFC

7    tortiously interfered with that contractual relationship; (4) as a result, Edible

8    Arrangements suffered an actual loss.

9         In regard to the second element that IFC knew of the contractual relationship

10   between Edible Arrangements and Mr. Chinsammy, Edible Arrangements must show

11   that IFC was aware that Edible Arrangements had a contract with Mr. Chinsammy.

12   Edible Arrangements does not have to prove that IFC was aware of the details of the

13   contract, only that it was aware of a contract existing.

14        To establish the third element that IFC's interference was tortious, Edible

15   Arrangements is only required to show that IFC acted maliciously and/or engaged in

16   improper conduct such as fraud, misrepresentation, intimidation, or molestation.  In this

17   context, the term malice is meant not in the sense of ill will, but intentional interference

18   without justification.  In other words, IFC's conduct  interference is tortious if Edible

19   Arrangements proves that IFC's conduct was induced by an improper motive or

20   executed by improper means.   In determining whether IFC's conduct was improper and

21   tortious, you should consider the nature of IFC's conduct, IFC's motive, the nature of

22   Edible Arrangements' interests that IFC interfered with, the interest which IFC sought to

1    advance by its actions, the social interests, if any, in protecting the freedom of action of

2    IFC, and the business interests of Edible Arrangements.

3    **TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS AND**
4    **EXPECTANCIES**

5        Edible Arrangements claims that IFC also tortiously interfered with its business

6    relationships and expectancies with prospective franchisees. An entity that intentionally

7    and improperly interferes with another's prospective contractual relation is subject to

8    liability to the other for the pecuniary harm resulting from the loss of the benefits of the

9    relation, whether the interference consists of inducing or otherwise causing a third party

10    not to enter into or continue the prospective relation or preventing the other from

11    acquiring or continuing the prospective relation.

12        To prevail on this claim, Edible Arrangements must prove several elements by a

13    preponderance of the evidence.  Edible Arrangements must show that (1) there was a

14    reasonable expectation of it entering into business relationships with the prospective

15    franchisees; (2) IFC had knowledge of that expectation or should have known of it; (3)

16    IFC intentionally interfered with those prospective relationships; and (4) IFC's

17    interference was tortious.  Lastly, Edible Arrangements must show that it suffered a loss

18    as a result of IFC's actions.

19        To establish the element of IFC's interference being tortious in regard to the

20    prospective franchisees, Edible Arrangements is only required to show that IFC acted

21    maliciously and/or engaged in improper conduct such as fraud, misrepresentation,

22    intimidation, or molestation.  As previously instructed, the term malice is meant not in the

23    sense of ill will, but intentional interference without justification.  In other words, IFC's

1  interference is tortious if Edible Arrangements proves that IFC's conduct was induced by

2  an improper motive or executed by improper means.   In determining whether IFC's

3  conduct was improper and tortious, you should consider the nature of IFC's conduct,

4  IFC's motive, the nature of Edible Arrangements' interests that IFC interfered with, the

5  interest which IFC sought to advance by its actions, the social interests, if any, in

6  protecting the freedom of action of IFC, and the business relationships and expectancies

7  of Edible Arrangements.

8  **VIOLATION OF CONNECTICUT UNIFORM TRADE SECRETS ACT**

9  Edible Arrangements claims that IFC violated Connecticut's Uniform Trade

10  Secrets Act when it misappropriated Edible Arrangements' trade secret information.  For

11  the purpose of convenience, I will refer to Connecticut's Uniform Trade Secrets Act as

12  CUTSA.

13  To succeed on this claim, Edible Arrangements must prove (1) that the

14  information at issue constitutes a trade secret, (2) that said information was

15  misappropriated by IFC, and (3) that Edible Arrangements suffered harm as a direct and

16  proximate result of IFC's use or disclosure of Edible Arrangements' trade secret or IFC

17  gained from such use or disclosure.  I will now explain each of these elements to you.

18  First, you must determine whether Edible Arrangements' information that is at

19  issue in this case constitutes a trade secret.  A trade secret may consist of any formula,

20  pattern, device or compilation of information which is used in one's business, and which

21  gives it an opportunity to obtain an advantage over competitors who do not know or use

22  it.  Information, including a formula, pattern, compilation, program, device, method,

23  technique, process, drawing, cost data or customer list, constitutes a trade secret when

4

1    such (1) derives independent economic value (actual or potential) from not being

2    generally known to, and not being readily ascertainable by proper means by other

3    persons who can obtain economic value from its disclosure or use; and (2) is the subject

4    of efforts that are reasonable under the circumstances to maintain its secrecy.

5           Depending on the nature of the business, a customer list may be a trade secret,

6    and an employee may be restrained from using the list if he acquired it in confidence

7    from his employer.  A list of customers, if their trade and patronage have been secured

8    by years of business effort and advertising and the expenditure of time and money,

9    constitutes an important part of a business and is in the nature of a trade secret.  It is the

10   property of the employer and may not be used by the employee as his own property or

11   to his employer's prejudice.

12          Although it is not essential that the proprietor have exclusive possession of the

13   information, a substantial element of secrecy must exist, to the extent that there would

14   be difficulty in acquiring the information except by the use of improper means.  Factors

15   you may use to determine whether the information at issue is a trade secret

16   include (1) the extent to which the information is known outside the business and by

17   employees and others involved in the business; (2) the measures taken by the employer

18   to guard the secrecy of the information; (3) the information's value to the employer and

19   to competitors; (4) the resources the employer expends in developing the information;

20   and (5) the ease or difficulty with which the information could be properly acquired or

21   duplicated by others.

22          Now, I must caution you, Edible Arrangements does not have to protect

23   its trade secrets with absolute secrecy in order to find reasonableness on its part.  Edible

1    Arrangements must show only that it has made an effort which you believe is reasonable

2    in your judgment to protect its trade secrets.  Reasonable precautionary measures for

3    maintaining the secrecy of the information is all that is required.

4         Second, if you find that the information and materials at issue constitute a trade

5    secret of Edible Arrangements, you must determine whether IFC misappropriated that

6    information.  Misappropriation means:

7         (a)  acquisition of a trade secret of another by a person who knows or
8         has reason to know that the trade secret was acquired by improper
9         means;

10        (b)  disclosure or use of a trade secret of another without express or
11        implied consent by a person who used improper means to acquire
12        knowledge of the trade secret;

13        (c)  disclosure or use of a trade secret of another without express or
14        implied consent by a person who, at the time of disclosure or use,
15        knew or had reason to know that his knowledge of the trade secret was
16        derived from or through a person who utilized improper means to
17        acquire it;

18        (d)  disclosure or use of a trade secret of another without express or
19        implied consent by a person who, at the time of disclosure or use,
20        knew or had reason to know that his knowledge of the trade secret was
21        acquired under circumstances giving rise to a duty to maintain its
22        secrecy or limit its use;

23        (e)  disclosure or use of a trade secret of another without express or
24        implied consent by a person who, at the time of disclosure or use,
25        knew or had reason to know that his knowledge of the trade secret was
26        derived from or through a person who owed a duty to the person seeking
27        relief to maintain its secrecy or limit its use; or

28        (f)  disclosure or use of a trade secret of another without express or
29        implied consent by a person who, before a material change of his

6

1   position, knew or had reason to know that it was a trade secret and
2   that knowledge of it had been acquired by accident or mistake.

3       Improper means includes theft, bribery, misrepresentation, breach or inducement

4   of a breach of duty to maintain secrecy, or espionage through electronic or other means,

5   including searching through trash.  If you find that IFC misappropriated Edible

6   Arrangements' trade secrets in one of these ways, then you must find in favor of Edible

7   Arrangements on this claim.

8   **CONNECTICUT UNFAIR TRADE PRACTICES ACT**

9       Edible Arrangements claims that IFC violated Connecticut's Unfair Trade

10   Practices Act by engaging in unfair and deceptive acts and trade practices.  For

11   purposes of convenience, I will refer to Connecticut's Unfair Trade Practices Act as

12   CUTPA.

13       To succeed on this claim, Edible Arrangements must prove that IFC's conduct

14   constituted an unfair or deceptive trade practice and that Edible Arrangements sustained

15   an ascertainable loss as a result of IFC's conduct.

16       A practice is unfair under CUTPA if:  (1) the practice, without necessarily having

17   been previously considered unlawful, offends public policy as it has been established by

18   statutes, the common law, or otherwise — in other words, it is within at least the

19   penumbra of some common law, statutory, or other established concept of unfairness;

20   (2) the practice is immoral, unethical, oppressive, or unscrupulous; and/or (3) the

21   practice causes substantial injury to consumers, competitors, or other businesspersons.

22   All three criteria do not need to be satisfied to support a finding of unfairness.  A practice

23   may be unfair because of the degree to which it meets one of the factors or

7

1   because to a lesser extent it meets all three.

2          I will now explain each of these factors more fully to you.  The first factor requires

3   you to consider whether IFC's conduct constituted a breach of established concepts of

4   fairness.  In making this assessment, you should consider, in part, whether IFC's

5   conduct offends public policy, that is whether it violates any Connecticut General

6   Statutes or gives rise to a common law claim under the law.  The second factor requires

7   you to consider whether IFC's conduct was immoral, unethical, oppressive or

8   unscrupulous.  The third factor requires you to consider whether IFC's acts caused a

9   substantial injury to Edible Arrangements.  To do this, Edible Arrangements must

10  prove:  (1) that the injury is substantial; (2) that the injury is not outweighed by any

11  benefits the questioned conduct gives to consumers, businessmen, or competitors; and

12  (3) that the injury must have been an injury that Edible Arrangements could not have

13  avoided.

14          In addition to considering whether IFC's practices were unfair, you may also

15  consider whether IFC engaged in deceptive conduct.  A practice is deceptive under

16  CUTPA if:  (1) IFC made a representation or statement likely to mislead; (2) Edible

17  Arrangements interpreted the representation reasonably under the circumstances; and,

18  (3) the misleading representation or statement was material - meaning that it would likely

19  affect Edible Arrangements' decisions or conduct.

20          Finally, when determining whether Edible Arrangements sustained an

21  ascertainable loss, keep in mind that a loss is a deprivation, detriment or injury.  A loss is

22  ascertainable if it is capable of being discovered, observed or established, but need not

23  be measured by a dollar amount.

8

1      **UNJUST ENRICHMENT**

2              Edible Arrangements seeks to recover for unjust enrichment, which means it

3      seeks to recover the value of the Confidential Information provided to IFC because IFC

4      was unjustly enriched by the provision of such information.  Unjust enrichment means

5      that it is contrary to equity and good conscience for the defendant to retain a benefit that

6      has come to the defendant at the expense of the plaintiff.  A plaintiff seeking recovery for

7      unjust enrichment must prove:  (1) that the defendant was benefitted; (2) that the

8      defendant unjustly did not pay the plaintiff for the benefits; and (3) that the failure of

9      payment was to the plaintiff's detriment.

10     **UNFAIR COMPETITION**

11             Edible Arrangements also brings a claim of unfair competition against IFC.  Unfair

12     competition is defined as any form of unlawful business injury that is tortious in nature

13     and in essence, it requires business rivals to compete honestly and fairly.  To prevail on

14     an unfair competition claim, the plaintiff must show that the defendant has

15     misappropriated the labors and expenditures of another.  Even where the information

16     would not otherwise qualify as a trade secret, the unauthorized physical taking and

17     exploitation of internal company documents, including detailed customer information by

18     an employee for use in his future business or employment may constitute unfair

19     competition.  In other words, Edible Arrangements must submit evidence

20     that IFC misappropriated a commercial or business advantage.

21     **STATUTORY THEFT (CONN. GEN. STAT. § 52-564)**

22             Edible Arrangements claims that IFC is liable for statutory theft pursuant to Conn.

9

1    Gen. Stat. § 52-564.  To succeed on this claim, Edible Arrangements must prove two

2    elements: (1) IFC intended to deprive Edible Arrangements of its property or appropriate

3    the same to itself; and (2) IFC wrongfully took, obtained, or withheld such

4    property from Edible Arrangements.

5        In regard to the first element, to intend to "deprive" another of property means to

6    intend to appropriate the property to oneself or to a third party.  To intend to

7    "appropriate" property of another to oneself or a third party means to intend either to

8    exercise control over the property, or to aid a third person to exercise control over it,

9    permanently, or for so long a period or under such circumstances as to acquire the

10   major portion of its economic value or benefit, or to dispose of the property for the

11   benefit of oneself or a third person.  A person acts "intentionally" with respect to a result

12   when his or her conscious objective is to cause such result.

13       The second element is that the defendant wrongfully took, obtained or withheld

14   the plaintiff's property.  "Wrongfully" means that the defendant had no legal justification

15   or excuse for taking, obtaining or withholding the property.  "Taking" means seizing an

16   article from the possession or control of the person entitled to it whether by force or

17   some other unlawful means.  "Obtaining" includes, but is not limited to, bringing about

18   the transfer or purported transfer of property or of a legal interest in the property from

19   the owner to the defendant or a third person.  "Withholding" means wrongfully keeping

20   property from its owner.  "Property" includes any money, personal property, real

21   property, thing in action, evidence of debt or contract, and article of value of any kind.

22       Unlike the other causes of action I am instructing you on, the plaintiff must prove

23   actions alleged for statutory theft by clear and convincing evidence.  The other causes of

1    action simply require proof by a preponderance of the evidence.

2        The clear and convincing standard is a more exacting standard than proof by a

3    preponderance of the evidence as I have previously defined that standard to you in

4    regard to other claims in this case.  Thus, the plaintiff cannot meet its burden of

5    establishing statutory theft by simply producing evidence which is slightly more

6    persuasive than that opposed to it, which would meet the burden of proof under the

7    preponderance of the evidence standard.  Instead, the plaintiff must produce clear and

8    convincing evidence which is evidence that is substantial and that unequivocally

9    establishes the elements of statutory theft, which I have explained to you.  Clear and

10    convincing evidence is evidence that establishes for you a very high probability that the

11    facts asserted are true or exist.

12    **PROXIMATE CAUSE**

13        In order for plaintiff to be entitled to damages on its claims against defendant,

14    there must be a showing by a preponderance of the evidence that the actions of the

15    defendant were a proximate cause of plaintiff's damage.  Proximate cause, as we use

16    the phrase in the law, means that cause or act which, as a natural sequence, produces

17    the damage and without which the damage would not have occurred.  In other words,

18    the conduct of a defendant must be a substantial factor in producing the damage to

19    plaintiff, and not a mere condition of or incident to the harm.

20        This does not mean, however, that the law recognizes only one proximate cause

21    of damage.  On the contrary, many factors or things, or the conduct of more than one

22    person may operate at the same time, either independently or together, to cause

23    damage.  In such a case, each may be a proximate cause.

11

**DAMAGES**

Now, if you have found that plaintiff has proven its claims by a preponderance of the evidence, then you may consider what damages, if any, are due the plaintiff.  Of course, the fact that I give you instructions on damages should not be taken as an indication that I think that damages should be, or should not be, awarded.  That is a determination which is left entirely to you.  I am instructing you on principles governing damages awards so that, in the event you should find defendant liable, you will know on what basis to consider any award of damages.

**COMPENSATORY DAMAGES**

Compensatory damages represent the sum of money that will fairly, adequately and reasonably compensate a party for harm proximately caused by another's conduct. Compensatory damages are those damages which would make a party whole. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize a party.   An award of damages is designed to place the damaged party, so far as it can be done by money, in the same position that party would have been in had there been no unlawful conduct.  The damaged party may recover for those losses which that party has proven by a preponderance of the evidence were the direct or natural result of the offending party's conduct.  A damaged party is entitled to those damages which the offending party should have realized might result from that party's conduct.

You may not guess or speculate as to the proper amount of the award of damages, but absolute certainty is not required.  Reasonable certainty is the test.  You

1    must be able, in view of the evidence which is offered, to arrive with a reasonable

2    degree of certainty at some conclusion as to what the damaged party lost.  Applying

3    these principles to the fact situation before you, should you conclude that any offending

4    party is liable, then you must determine an amount that is fair compensation to the

5    damaged party.   You should not award damages more than once for the same injury.

6    **PUNITIVE DAMAGES**

7    If you have awarded compensatory damages in this case on any of plaintiff's

8    claims, then you must also determine whether an award of punitive damages may be

9    assessed against IFC.  In this case, you may consider whether acts or omissions of IFC,

10    if you find them to have been proven, were so serious that it should pay a penalty so that

11    in the future, it or others will be deterred from engaging in the same conduct.  Whether

12    you find that an assessment of punitive damages is warranted should be based on

13    whether you find that the liable party engaged in the following things:

14        (1)    willful or malicious violation of the injured party's common law and/or
15                  statutory rights;
16

17        (2)    an intentional act by a liable party in gross disregard of the injured party's
18                  rights;

19        (3)    reckless or wanton disregard by the liable party as to whether it was
20                  violating the injured party's rights.

21    If you find any of these three things to have been proven, then you may decide

22    whether punitive damages are warranted.  Again, whether or not punitive damages are

23    warranted is a matter exclusively within the province of the jury.  You will determine only

24    if punitive damages are warranted.  However, you will not set an amount of punitive

25    damages.  Rather, it is up to the Court to set the amount of punitive damages.

1  **V.      SPECIAL VERDICT FORM (INTERROGATORIES)**

2        Let me explain the procedure you will be following in connection with your

3  decision making in this case. You are going to be asked to answer several questions

4  that concern the issues in this case.  A set of those questions will be distributed to each

5  of you when you retire to begin deliberations.  Fill out only the set with room for the

6  foreperson's signature and return it to the court.

7        Many questions you will be asked to answer can be answered yes or no.  Several

8  of the questions need be answered only if a certain answer or answers have been given

9  to a previous question or questions. You should not answer any question one way to

10  avoid answering a later question, but it may turn out that you do not have to answer

11  every question.  Each question that you answer should be given individual consideration.

12        Do not assume from the wording of any question or from the fact that a question

13  is asked that there is any particular answer that you are supposed to give. Your answers

14  should be given solely on the basis of your assessment of the evidence and the

15  application of these instructions of law.

16  **VII.     CONCLUSION**

17        You may now retire to the jury room. Elect one of your members as foreperson.

18  The foreperson is in no way more important in your deliberations.  His or her function is

19  to pass any requests for clarification of these instructions or something of that nature on

20  to me, and to announce your verdict.

21        If you do have such requests, please give them to the Marshal, in writing, and he

22  or she will bring them to me.  Be careful to give us no indication of the status of your

1   deliberations when you make such requests; we are not permitted to know anything

2   about how fast or slow you are proceeding, or whether you are divided in your positions,

3   or any other information about what is taking place in the jury room.

4           As you proceed to your deliberations in the jury room, determine the facts on the

5   basis of the evidence as you have heard it, and apply the law as I have outlined it to you.

6   Render your verdicts fairly, uprightly, and without a scintilla of prejudice.

7           Although all jurors must agree before a verdict can be rendered, it is nevertheless

8   the duty of each of you to discuss and consider the evidence and the opinions of the

9   other jurors.  If, in the course of your deliberations, you become convinced that the views

10  you held are erroneous, do not hesitate to reexamine those views and change your

11  opinion.  Ultimately, however, you must decide the case for yourself.   Do not surrender

12  your beliefs as to the proper weight of the evidence solely because of the opinions of

13  other jurors or for the mere purpose of returning a verdict.